# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                Case No. 06-Cr-117

BILL A. MOORE,

    Defendant.

# RECOMMENDATION TO THE
# HONORABLE LYNN ADELMAN

## NATURE OF THE CASE

On May 16, 2006, a federal grand jury sitting in this district returned a two-count indictment against defendant Bill A. Moore. Count One charges the defendant with knowingly and intentionally possessing with intent to distribute five grams or more of a mixture containing cocaine base in the form of crack cocaine and a mixture and substance containing cocaine, in violation of Title 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B). Count Two charges the defendant with knowingly possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The defendant appeared for an arraignment and plea before United States Magistrate Judge Aaron E. Goodstein and entered a plea of not guilty. Pursuant to the pretrial scheduling order issued by the court, the defendant filed a motion to suppress physical evidence based on an unlawful stop and arrest and unlawful vehicle seizure. (Docket #9). This motion will be addressed herein.

## **MOTION TO SUPPRESS PHYSICAL EVIDENCE**

Defendant Bill A Moore moves this court to suppress any and all physical evidence recovered by City of Sheboygan police officers on March 22, 2006, from his person following a warrantless detention and arrest conducted at Fatty Arbuckles Tavern in Sheboygan, Wisconsin. He also seeks suppression of physical evidence seized in a subsequent search of a Ford mini-van that he was driving at the time of his detention and arrest. The government opposes the motion.

On October 4, 2006, the court conducted an evidentiary hearing on the defendant's motion. At the hearing, the following individuals testified: City of Sheboygan Police Officers Michael McCarthy and Joel Kuszynski. The parties stipulated to Sheboygan Police Department reports authorized by Captain James Tetzlaff, Officer Melanie Schmidt and Lieutenant James Veeser. Based on the evidence presented at the hearing and the stipulation, the court makes the following findings of fact.

## **Findings of Fact**

On March 22, 2006, at 11:05 a.m., Sheboygan Police Officers Michael McCarthy and Joel Kuszynski were dispatched to Fatty Arbuckles Tavern after a complaint was received at 10:44 p.m. from an anonymous female that individuals were smoking marijuana in the lower level of the bar. The anonymous female did not provide a description of the persons who were allegedly smoking marijuana at the tavern, but she said that the individuals could be seen by looking through the back door. Officer McCarthy, who had been to the tavern once before in his professional capacity, was aware, based on information presented to officers at roll call, that there had been prior reports of drug trafficking at Fatty Arbuckles Tavern.

Officer Kuszynski, who had been assigned to check taverns in the past, was familiar with Fatty Arbuckles Tavern. He knew that confidential informants had advised that the tavern was a "crack" bar, that people used crack cocaine at the bar, and that employees reportedly were paid with crack cocaine.

When Officers McCarthy and Kuszynski arrived at the tavern at about 11:00 p.m., Officer Kuszynski went to the front door and Officer McCarthy went to the back door. Officer McCarthy observed two individuals, a taller black male and a shorter white male, in the lower portion of the bar. He did not observe the two individuals smoking marijuana from outside the tavern.

Officer McCarthy attempted to enter through the back door, but the door was locked. As he was trying to open the door, the door rattled. Upon hearing the noise, the white male ran upstairs and the black male "pedaled backwards" down the hallway. Officer McCarthy radioed Officer Kuszynski to stop the white male. Officer McCarthy did not announce that he was a police officer while he was outside the bar.

Officer McCarthy then entered the front door of the tavern and observed Officer Kuszynski at the upstairs bar with the white male, who was subsequently identified as David Orvis, the manager of the bar. Officer McCarthy recognized Mr. Orvis, but he did not speak to him. Officer McCarthy did not detect an odor of marijuana on Mr. Orvis. The tavern is a two-story structure with a second bar located on the lower level. Officer McCarthy went to the lower level of the tavern.

When Officer Kuszynski entered the front door of the bar, he asked Mr. Orvis who he was. Officer Kuszynski told Mr. Orvis why the officers were at the bar and then asked him if he could go to the lower level which was roped off. Mr. Orvis said that he could because the

downstairs was open to the public. Officer Kuszynski did not notice any odor of marijuana on Mr. Orvis. He had had no prior contact with Mr. Orvis.

Officer Kuszynski did not recall if he asked Mr. Orvis for identification or if he asked him if he had any marijuana in his possession. Officer Kuzinski did not ask Mr. Orvis if he was carrying any weapons. He would have patted down Mr. Orvis if the defendant had not attempted to flee.

When Officer McCarthy reached the lower level of the tavern he saw the black male, who was subsequently identified as the defendant, at the bottom of the stairs. The defendant was on his cell phone and was walking in the hallway. He did not make eye contact with Officer McCarthy. Officer McCarthy had had no prior contact with the defendant. Officer Kuszynski and Mr. Orvis came down the stairs and saw the defendant walk out of the bathroom area.

When the defendant came out of the hallway, Officer McCarthy asked him for identification and also asked him to get off the phone. Officer McCarthy was two to three feet from the defendant and noticed an odor of fresh, not burnt, marijuana coming from the defendant. At this point, Officer Kuszynski and Mr. Orvis were behind Officer McCarthy. Officer Kuszynski smelled an odor of burnt marijuana on the defendant. Officer Kuszynski talked to Mr. Orvis while Officer McCarthy was speaking with the defendant. No other individuals were in the lower level of the bar.

Officer McCarthy initially asked the defendant if he knew why the officers were at the tavern. He then explained to the defendant that the police department had received an anonymous complaint about individuals using drugs at the tavern. He asked the defendant if he had any marijuana in his possession. The defendant said, "no." When asked if he had

- 4 -

any weapons, the defendant responded, "no," stating that he only had his cell phone and keys. Officer McCarthy asked the defendant if he would have a problem with being searched. The defendant responded loudly and emphatically that he had a "big problem" with the officer searching him. Officer McCarthy observed that the defendant was very nervous and that his leg was shaking.

Officer McCarthy decided to conduct a pat-down search of the defendant because of the anonymous complaint about persons smoking marijuana at the tavern, the historical information about drug use at the tavern, and the defendant's nervousness when he encountered the officer. The officers also were concerned for their safety because they were aware that people involved in drug dealing are at times armed. Officer Kuszynski had a general fear for his safety because of the reported use of drugs at the tavern and because he knew that drug dealers are sometimes armed.

Officer McCarthy asked the defendant to turn and face way from him so he could do a pat-down search. The defendant turned around, but he then ran up the stairs and Officer McCarthy ran after him. Officer McCarthy called for backup.

The defendant tripped on the stairs. Officer McCarthy reached the defendant and tried to secure his arms. The defendant was struggling. As Officer McCarthy tried to secure the defendant's arm and head, both of them fell backwards about five to six steps into the pool table. The defendant was fighting with Officer McCarthy. The defendant was able to get outside the tavern where the struggle between Officer McCarthy and the defendant continued. Officer Kuszynski pulled a gun on the defendant because he thought the defendant was reaching for something. Ultimately, the defendant was placed in handcuffs. When he told

- 5 -

the officers the handcuffs were too tight, the cuffs were loosened. Officer Kuzinski was injured during the struggle.

During the struggle, the defendant's jacket was pulled off. Subsequently, six grams of marijuana, 50 grams of crack cocaine and three separate packages of powder cocaine were found in the defendant's jacket. The marijuana was in a plastic bag tied in a knot. The defendant was arrested and taken to police headquarters. According to the stipulated Sheboygan Police Department reports, the set of keys found in the defendant's possession belonged to a vehicle in the back, lower parking lot of Fatty Arbuckles Tavern.

Subsequently, a search warrant was obtained for the vehicle, a green 1995 Ford van with Wisconsin license plates. During the search of the vehicle, officers located an envelope addressed to the defendant, a loaded handgun on the floor in the area directly behind the driver's seat of the vehicle, rounds of ammunition, a box of ammunition, and a black case containing a loaded Glock weapon, in addition to other items.

## **Analysis**

In seeking suppression of the evidence, the defendant asserts that the law enforcement officers had no lawful basis to conduct an investigatory stop based on the information provided by the anonymous caller because they lacked a reasonable suspicion, supported by articulable facts, of any criminal activity. The defendant further contends that even if the officers had a lawful basis to conduct an investigatory stop, they had no grounds to conduct a pat-down search because they had no reasonable basis to believe that the defendant was armed and dangerous. Specifically, the defendant asserts that the fact that he refused to consent to a pat-down search did not provide a basis for such search. Furthermore, the defendant contends that the police officers' seizure of the vehicle driven by

- 6 -

Case 2:06-cr-00117-LA   Filed 12/22/06   Page 6 of 13   Document 22

the defendant long after he had been arrested and removed from the scene was the fruit of the unlawful search and seizure of his person.

In opposing the motion, the government asserts that Officers McCarthy and Kuszynski were entitled to stop the defendant because they reasonably suspected that criminal activity was occurring at the tavern. The government contends that the pat-down search was lawful because, under the totality of the circumstances, Officer McCarthy reasonably believed that the defendant might be armed and dangerous.

Specifically, the government points out that the officers were responding to a marijuana-related complaint at a tavern known as a drug location and that they detected the odor of marijuana coming from the defendant. The government also cites to the fact that the defendant and Mr. Orvis were alone in an area that was roped off from the upstairs and that, when Officer McCarthy tried to enter through the locked back door, Mr. Orvis ran and Mr. Moore walked backwards down the hallway. The government points out that when questioned by Officer McCarthy, the defendant appeared nervous and his leg was shaking.

The government maintains that the evidence found in the mini-van driven by the defendant was not the fruit of an unlawful stop. It also asserts that even if there had been an unlawful stop, any taint was sufficiently attenuated by the time the officers searched the van.

It is well established that police officers may conduct a brief, investigatory stop of a suspect if they have knowledge of "specific and articulable facts which, taken together with the rational inferences from those facts" could cause them to conclude, in light of their experiences, that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 21 & 30 (1968); see also, Alabama v. White, 496 U.S. 325, 329-30 (1990); United States v. Johnson, 170 F.3d 708, 713 (7th Cir. 1999). "'Reasonable suspicion' must be based on some objective

- 7 -

manifestation that the suspect is involved in criminal activity." United States v. Wimbush, 337 F.3d 947, 949 (7th Cir. 2003) (citing United States v. Swift, 220 F.3d 502, 506 [7th Cir. 2000]). The court determines reasonable suspicion based on the totality of the circumstances known to the officer at the time of the stop, including the experience of the officers and the characteristics of the subject. United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003). United States v. Jackson, 300 F.3d 740, 745-46 (7th Cir. 2002); see also, United States v. Sokolow, 490 U.S. 1, 8 (1989). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama, 496 U.S. at 330.

Law enforcement officers may conduct a limited pat-down search of individuals subject to investigatory detention in order to determine whether the person is, in fact, carrying a weapon and to neutralize the threat of physical harm. Terry, 392 U.S. at 24-27. Thus, a police officer may conduct a reasonable search for weapons for his safety, "where he believes that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Id. at 27.

Here, the officers went to Fatty Arbuckles Tavern based on an anonymous call from a female who stated that there were individuals in the lower level of the tavern smoking marijuana. The caller also said that the individuals could be seen by looking through the back door. Unlike the tip from an informant whose reputation can be assessed and who can be held accountable if the allegations turn out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." Florida v. J.L., 529 U.S. 266, 270 (2000) (quoting Alabama v. White, 496 U.S. 325, 329 [1990]). However, there are circumstances in which "an anonymous tip, sufficiently corroborated, exhibits 'sufficient indicia

of reliability to provide reasonable suspicion to make the investigatory stop.'" Florida v. J.L., 529 U.S. at 270 (quoting Alabama v. White, 496 U.S. at 327).

In this case, although the caller identified where the individuals were to be found, the limited information provided by the anonymous caller, without more, did not provide reasonable suspicion to believe that the defendant may be involved in criminal activity. However, Officer McCarthy possessed additional information before he made the decision to conduct a pat-down search of the defendant.

The evidence shows that Officer McCarthy went to the back door of the tavern and observed two individuals in the lower level of the bar as the anonymous caller had stated. When Officer McCarthy rattled the door as he was trying to enter, one person, the white male, ran upstairs and the other individual, a black male "pedaled backwards" down the hallway.

Officer McCarthy then went into the front door of the bar, went downstairs to the lower level and saw the defendant talking on his cell phone. Officer McCarthy asked the defendant for identification and requested that he get off the cell phone. The defendant complied. Officer McCarthy, who was about two to three feet from the defendant, detected an odor of fresh marijuana coming from the defendant. The defendant maintains that Officer McCarthy's testimony is not credible because the unsmoked marijuana was in a closed plastic bag located inside the defendant's jacket pocket. Even if the court were to conclude that Officer McCarthy's testimony was not credible, which it does not, Officer Kuszynski, who was behind Officer McCarthy, testified that he also detected an odor of marijuana coming from the defendant, specifically burnt marijuana.

Officer McCarthy told the defendant that an anonymous caller had contacted the police department and reported that individuals were using marijuana in the lower part of the tavern.

The defendant denied having any marijuana or any weapons in his possession. During this encounter, Office McCarthy noticed that the defendant's leg was shaking and that he was very nervous. When asked, the defendant emphatically stated that he had a "big problem" with the officer searching him.

Under the totality of the circumstances – the information about individuals smoking marijuana in the lower level bar, the actions of the two lone individuals in the lower bar area, the odor of marijuana on the defendant detected by both officers, even though the defendant denied any marijuana possession, and the defendant's nervousness upon encountering the officers – the court finds that Officer McCarthy had reasonable suspicion to believe that "criminal activity may be afoot." Terry, 392 U.S. at 30.

The defendant also argues that the officers had no reasonable basis to conclude that the defendant was armed and dangerous at the time. He points out that the defendant initially was cooperative and complied with Officer McCarthy's directives until he declined to be searched. He also points out that, despite reports of drug use and drug dealing at the tavern, Officer McCarthy was aware of only one arrest – related to alcohol – at the tavern. Finally, the defendant states that neither officer felt compelled to search the white male.

Both Officers McCarthy and Officer Kuszynski knew, based on their training and experience, that persons involved with drugs sometimes have weapons. They had a report of drug use at the tavern and, when they encountered the defendant alone in the lower level of the bar, they both detected the odor of marijuana on him. Knowing of the relationship between drugs and guns, See, e.g., Muscarello v. United States, 524 U.S. 125, 132 (1998). they had a reasonable concern for their safety. Thus, considering all the evidence available to the officers, Officer McCarthy was permitted to conduct a limited pat-down search of the

- 10 -

defendant for his and Officer Kuzynski's safety. He properly could pat down the defendant to determine whether he was, in fact, carrying a firearm to neutralize the threat of harm. See Terry, 392 U.S. at 24-27.

The defendant accurately reports that Mr. Orvis, the white male, was not subjected to a pat-down search. However, neither officer detected an odor of marijuana on Mr. Orvis and events were moving rapidly. Mr. Orvis, who identified himself as the manager of the tavern, and Officer Kuzinski followed Officer McCarthy to the roped-off lower level of the tavern to locate the black male. Officer McCarthy had no contact with Mr. Orvis, but was focused on finding the black male. Officer Kuzinski was dealing with Mr. Orvis. Officer Kuzinski testified that he planned to pat down Mr. Orvis, but before he could do so, the defendant attempted to flee. Regardless, the fact that Mr. Orvis was not patted down by Officer Kuszynski does not call into question the basis for Officer McCarthy's attempted pat-down search of the defendant.

The facts establish that no pat-down search of the defendant occurred in this case because the defendant fled up to the stairs.[1] After a struggle that took place both in the tavern and in the outside parking area, the defendant was placed in handcuffs. Officer Kuzynski was injured during the struggle. Given the defendant's actions, the officers were entitled to arrest the defendant, which they did. See United States v. Pryor, 32 F.3d 1192, 1195 (7th Cir. 1994) (Generally, persons have no right to forcibly resist arrest, even if the arrest is unlawful.). Since the officers were entitled to arrest the defendant, he could properly

---

[1] The court notes that walking away quickly or fleeing in the face of commands by officers to stop is evasive behavior that contributes to the reasonableness of an officer's suspicion. See United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003); United States v. Quinn, 83 F.3d 917, 921-22 (7th Cir. 1996).

- 11 -

be searched incident to that arrest. See Chimel v. California, 395 U.S. 752, 768 (1969) (Subsequent to a lawful arrest, police officers may search the person of an arrestee and any area in his immediate control without a search warrant to protect them from danger and prevent the destruction of evidence.).

The defendant maintains that the evidence found in the van must be suppressed because it is the fruit of an unlawful Fourth Amendment violation. The court disagrees. The officers had a reasonable suspicion to speak to the defendant as part of their investigation of a late night anonymous complaint regarding drug use at Fatty Arbuckle's tavern. As noted, based on the totality of the circumstances, Officer McCarthy had reasonable suspicion to believe that the defendant may have been involved in criminal activity and, given the nature of the alleged activity, he could properly conduct a pat-down search of the defendant for his safety and the safety of Officer Kuszynski. The defendant's subsequent actions resulted in his arrest and the search of his person.

During the search, officers discovered six grams of marijuana, 50 grams of crack cocaine and three packages of powder cocaine in the defendant's jacket. Based on the discovery of these illegal drugs, the officers obtained a search warrant for the defendant's Ford mini van which was in the Fatty Arbuckles parking lot. Since the defendant was not unlawfully seized and search, the evidence obtained from the defendant's vehicle pursuant to a state search warrant is not subject to suppression.

Based on the foregoing, the court concludes that neither the evidence obtained from the defendant's person nor the evidence obtained from his vehicle pursuant to a search warrant is subject to suppression. Accordingly, the court will recommend that the United

States District Judge enter an order denying the defendant's motion to suppress physical evidence based on an unlawful stop and arrest and unlawful vehicle seizure. (Docket #9).

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Bill A. Moore's motion to suppress physical evidence. (Docket #9).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2006.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge