# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                      Case No. 06-CR-117

**BILL A. MOORE**
        **Defendant.**

## DECISION AND ORDER

Defendant Bill Moore, charged with possession with intent to deliver crack cocaine and possession of a firearm as a felon, moved to suppress evidence based on an unlawful seizure and search of his person. He also moved to suppress as the fruit of the poisonous tree evidence subsequently seized from his vehicle pursuant to a search warrant. I referred the motion to a magistrate judge, who held a hearing and recommended denial. Defendant objects to the recommendation, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b).[1]

## I. FACTS

City of Sheboygan Police Officer Michael McCarthy testified that March 22, 2006, at about 11:05 p.m. he was dispatched to a tavern called Fatty Arbuckles based on an anonymous drug complaint. (Oct. 4, 2006 Hr'g Tr. at 8-10.) McCarthy stated that at about 10:44 p.m. an unidentified female called police and stated that individuals were smoking

---

[1] In his objections, defendant requests that I grant his motion or, in the alternative, hold a de novo hearing. I find that I can properly decide the motion based on the record made before the magistrate judge and thus deny the request for a de novo hearing. See United States v. Raddatz, 447 U.S. 667, 673 (1980) (holding that district court may review magistrate's recommendation de novo without holding de novo hearing).

marijuana in the lower level of the tavern. (Id. at 10.) McCarthy did not personally speak to or identify the tipster, and was uncertain of the source of her knowledge. (Id. at 33.) However, he stated that he was familiar with Fatty Arbuckles and had received information during roll call that drug use was common there.[2] (Id. at 10-11.)

McCarthy and Officer Joel Kuszynski went to the tavern, and they decided that McCarthy would go to the back door and Kuszynski the front door. (Id. at 12.) McCarthy testified that when he got to the back door, he looked in the window and saw two individuals standing in the lower level at the end of the bar, near a hallway. (Id. at 13-14; see also Govt. Ex. 4, 5.) One of the individuals was a black male wearing a dark jacket (later identified as defendant), and the other was a shorter, white male wearing light colored clothing. (Id. at 14-15.) The two were facing one another and appeared to be talking. McCarthy stated that he tried to enter, but the back door was locked. The handle of the door rattled when McCarthy tried to enter, and the white male immediately ran up the stairs to the upper level of the tavern. The black male backpedaled down the hallway. (Id. at 15.)

McCarthy radioed Kuszynski and advised him to stop the white male. McCarthy then walked up the driveway and entered the front door. (Id. at 16.) When he entered he saw Kuszynski and the white male, later identified as David Orvis, the manager of the tavern, standing a few feet from the top of the stairway to the lower level, which was roped off.[3] (Id. at 17-18.) Orvis allowed the officers to proceed to the lower level, and upon reaching the

---

[2]McCarthy testified that he had personally been to the tavern in a professional capacity just once – to back up another officer regarding a complaint of an intoxicated person refusing to leave. That incident did not involve drugs. (Id. at 31-32.)

[3]McCarthy testified that he recognized Orvis and did not smell marijuana on him. (Tr. at 53.)

2

bottom of the stairs, McCarthy saw defendant coming out of the hallway down which he had previously backpedaled. (Id. at 18.) Defendant was talking on a cell phone, and McCarthy asked him to provide identification and hang up the call, which he did. McCarthy testified that he noticed the odor of fresh marijuana coming from defendant's person, (id. at 20) and that defendant appeared nervous, with his left leg shaking (id. at 22). McCarthy further stated that defendant did not stop but rather continued to move towards the stairs during this encounter. (Id. at 22, 44.)

McCarthy asked defendant if he knew why the officers were there, and defendant said he did not. McCarthy advised that they had received a complaint about individuals smoking marijuana in the lower level of the tavern. McCarthy asked defendant if he had any marijuana, and defendant said he did not. (Id. at 21.) McCarthy then asked defendant if he would have a problem with McCarthy searching him, and defendant loudly responded that he "would have a big problem with [McCarthy] searching him." (Id. at 22.) McCarthy asked defendant if he had any weapons on him. Defendant said he did not, only his cell phone and keys. Defendant then stepped back and pulled the lower portion of his jacket apart. (Id. at 22-23.) However, McCarthy testified that he could not determine whether defendant was armed based on this gesture; for instance, he could not see the small of defendant's back. McCarthy testified that he then decided to pat defendant down for officer safety based on the nature of the call, his observations of defendant's and Orvis's conduct, and the information of drug activity at the tavern.[4] (Id. at 23.)

McCarthy asked defendant to turn and face away from him to conduct the pat down.

---

[4]McCarthy testified that "where there's drugs, there's usually guns." (Id. at 23.)

3

Defendant turned away, but just as McCarthy stepped towards him, defendant ran for the stairs. (Id. at 25.) McCarthy testified that defendant tripped before he got to the stairs. McCarthy pursued and tripped on top of defendant. McCarthy tried to secure defendant, but they fell backwards into a pool table. (Id. at 25.) The two continued to struggle, during which McCarthy pulled off defendant's jacket. The struggle ended when Officer Kuszynski placed his gun to defendant's head, and defendant was cuffed. (Id. at 26-27.) McCarthy pulled $741 cash from defendant's pocket. He then searched defendant's jacket, recovering six grams of marijuana in a plastic sandwich bag, fifty grams of crack cocaine, and three separate packages of powder cocaine. (Id. at 28-29.)

Officer Kuszynski testified that he accompanied McCarthy to Fatty Arbuckles based on the tip. He stated that, according to the tipster, the individuals smoking marijuana could be seen through the window by the back door. (Id. at 55.) Kuszynski testified that he had been to the tavern before, and that he had received information from informants that it was a crack bar and employees were paid with crack cocaine. (Id. at 56.)

Kuszynski stated he entered the front door and made contact with the bartender, when McCarthy radioed that a man in a white shirt was running up the stairs. Kuszynski stopped the man, whom he did not recognize, and identified him as David Orvis. (Id. at 57, 61.) Kuszynski asked Orvis if the lower level was open to the public, and Orvis said that it was, although the stairs were roped off. (Id. at 57.) Kuszynski asked Orvis if he could go downstairs, and Orvis said yes. (Id. at 57-58.) Kuszynski said he did not smell marijuana on Orvis. (Id. at 58.) He did not ask Orvis if he had weapons or drugs on him. (Tr. at 62.)

Orvis, Kuszynski and McCarthy proceeded downstairs and encountered defendant. Kuszynski testified that he smelled the odor of burnt marijuana coming from defendant. (Id.

4

at 58.) McCarthy proceeded to question defendant, while Kuszynski spoke to Orvis. (Id. at 59.) McCarthy eventually decided to pat defendant down, and the struggle ensued. (Id. at 60.)

## II. DISCUSSION

Defendant argues that the officers lacked a lawful basis to stop and search him. Police may temporarily stop and detain a person in order to dispel a reasonable suspicion that the person has or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 10-11 (1968). To justify a Terry stop, the officer must have specific and articulable facts which, taken together with the rational inferences drawn from them, reasonably warrant the intrusion. United States v. Rivers, 121 F.3d 1043, 1045 (7th Cir. 1997). Reasonable suspicion is a quantum of proof less demanding than the probable cause needed for arrest, but it must be more than an inchoate suspicion or hunch. United States v. Ienco, 182 F.3d 517, 523 (7th Cir. 1999); United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996). The court considers the totality of the circumstances in deciding whether the officer had reasonable suspicion, including the experience of the officer, the behavior of the defendant and the location of the encounter. United States v. Baskin, 401 F.3d 788, 791-92 (7th Cir. 2005); United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000).

Once the police have the reasonable suspicion required to justify an investigatory stop, they may use reasonable means to effectuate that stop, including a measured use of force. United States v. Lawshea, 461 F.3d 857, 860 (7th Cir. 2006). An officer may, as part of a Terry stop, conduct a non-invasive pat-down if he has reason to believe that the person he is dealing with is armed and dangerous. Rivers, 121 F.3d at 1045. In order to justify a pat-down, the officer must "be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others." United States v. Brown, 188

5

F.3d 860, 864 (7th Cir. 1999).

In the present case, the magistrate judge concluded that the officers had reasonable suspicion to stop and pat defendant down based on (1) the anonymous tip of drug use in the lower level of the bar, (2) the conduct of Orvis and defendant in leaving the area when McCarthy tried to enter the back door, (3) the odor of marijuana on defendant's person, (4) defendant's nervousness and leg shaking while McCarthy spoke with him, (5) defendant's statement that he had a "big problem" with being searched, (6) the previous reports of drug use in the tavern, and (7) McCarthy's belief that those involved with drugs often have weapons. While I tend to agree that the totality of these circumstances established reasonable suspicion (or even probable cause),[5] I need not base my decision on these facts alone.

## A.  Significance of Defendant's Flight

When McCarthy first approached defendant, he asked defendant to provide identification, which defendant voluntarily did while continuing on towards the stairs. McCarthy did not at that time order defendant to stop or lay hands on him, and it is undisputed that defendant continued to move during the initial encounter.[6] Further, defendant did not submit to McCarthy's attempt to pat him down, and the officers discovered no contraband until after defendant ran and was subdued and arrested. Under these circumstances, defendant was not

---

[5] Courts have regularly held "that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006) (collecting cases).

[6] At the hearing, McCarthy was asked:
"Q:  So Mr. Moore didn't actually stop when you were exchanging I.D. or talking?
A:  He briefly stopped when he handed me his driver's license, but we just kind of kept turning."
(Tr. at 22.)  McCarthy later testified that during the initial encounter he and defendant were walking in a half circle towards the stairs. (Tr. at 44.)

6

seized for Fourth Amendment purposes until after the struggle with the officers commenced.

The court applies a two-part test for deciding Fourth Amendment claims under such circumstances, determining (1) whether any physical force simultaneously accompanied the officer's initial show of authority and (2) whether the defendant failed to comply with that show of authority. United States v. $ 32,400.00 in United States Currency, 82 F.3d 135, 138 (7th Cir. 1996) (citing California v. Hodari D., 499 U.S. 621, 624-27 (1991)). "If no physical force accompanied the show of authority and a person chose to ignore or reject that show of authority, the defendant is not seized until the officer applied physical force and the person submitted to the officer's show of authority." Id.

In the present case, McCarthy applied no physical force before defendant ran. Therefore, McCarthy did not seize defendant until he actually laid hands on and subdued defendant. See United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) (finding that the defendant was not seized where, prior to flight, he paused for a few moments and gave his name; rather, there was no seizure until the officer grabbed the defendant); see also United States v. Harris, 313 F.3d 1228, 1234 (10th Cir. 2002) (noting that a seizure does not occur simply because a police officer approaches an individual, asks questions, or requests identification, but rather only if a reasonable person would have believed that he was not free to leave, and that, ultimately, a seizure requires either the use of physical force by the officer or submission by the individual to the officer's assertion of authority). This means that I may also consider defendant's conduct after he failed to submit to McCarthy's show of authority in deciding whether McCarthy had a lawful basis for a seizure and search. See, e.g., Valentine, 232 F.3d at 358 (collecting cases).

McCarthy asked defendant to face away from him for purposes of the pat-down.

Defendant turned but then ran away. McCarthy pursued and, after a struggle, took defendant into custody. During the struggle, defendant's jacket was pulled off. After defendant's arrest, officers searched the jacket and found drugs and a set of keys to a vehicle parked outside the bar.[7]

Courts have regularly held that a suspect's flight may be used to justify reasonable suspicion. See, e.g., Illinois v. Whardlow, 528 U.S. 119, 124 (2000); Baskin, 401 F.3d at 792; United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003); United States v. Raibley, 243 F.3d 1069, 1075 (7th Cir. 2001). In the present case, defendant's flight when McCarthy attempted to conduct a pat down provides further evidence that defendant was engaged in criminal activity. Adding defendant's flight to the list of factors recounted above, McCarthy had more than sufficient justification to seize defendant. See United States v. Seymour, No. 06-2306, 2007 U.S. App. LEXIS 313, at *7 (7th Cir. Jan. 8, 2007) ("There can be no doubt that the officer was entitled, upon seeing the defendant get out of a car that had been reported stolen, to approach him to ask questions – indeed a police officer doesn't need even bare suspicion simply to approach a person and ask a question of him – and to chase him when he ran away at the officer's approach and to seek to subdue him when he resisted being stopped, and then search him, including his clothes, including the abandoned sweatshirt.") (internal citations omitted).

Finally, based on defendant's physical struggle with the officers, which resulted in injuries to Kuszynski, the officers were justified in arresting defendant for resisting or battery

---

[7]Officers subsequently obtained a warrant to search the vehicle, which apparently turned up guns and ammunition.

8

to a police officer after they brought him under control.[8] See United States v. Pryor, 32 F.3d 1192, 1195-96 (7th Cir. 1994) (stating that there is no right to forcibly resist, even if the officer lacked grounds to seize the suspect). Once defendant was under arrest, the officers were justified in searching his person and his jacket incident thereto. See, e.g., Chimel v. California, 395 U.S. 752 , 762-63 (1969); United States v. Weaver, 8 F.3d 1240, 1242 (7th Cir. 1993).

Therefore, I find that Officer McCarthy lawfully seized and searched defendant. Because the seizure was valid and the contraband lawfully recovered, it follows that the subsequent search of defendant's vehicle pursuant to a warrant, which was based in part on the results of the search of defendant's person, was also lawful. See United States v. May, 214 F.3d 900, 906 (7th Cir. 2000). Accordingly, defendant's motion to suppress must be denied.

**B.    Reasonable Suspicion Prior to Flight**

For the reasons stated above, I find that defendant's flight, coupled with the other circumstances, provided grounds to seize defendant. However, even if defendant was seized for Fourth Amendment purposes prior to the struggle with the officers, as defendant contends, I would agree with the magistrate judge that McCarthy had reasonable suspicion for the seizure. While defendant notes that certain factors relied upon by the magistrate are individually insufficient, I must consider the totality of the circumstances. See United States v. Arvizu, 534 U.S. 266, 274 (2002) (rejecting an approach that focuses on factors in isolation).

I agree that the anonymous tip, standing alone, would not justify a stop. See Florida v. J.L., 529 U.S. 266, 268 (2000). However, the officers possessed additional evidence, including

---

[8] Defendant later pleaded guilty to battery to a police officer in Sheboygan County Case No. 06-CF-159. I may take judicial notice of the public record of this state prosecution. See Denius v. Dunlap, 330 F.3d 919, 926 (7th Cir. 2003).

9

defendant and Orvis's evasiveness when McCarthy tried to enter through the back door, see, e.g., Tom v. Voida, 963 F.2d 952, 958 (7th Cir. 1992) (noting that evasive actions are relevant in determining whether officers had reasonable suspicion); defendant's nervousness and shaking when McCarthy encountered him, see, e.g., Whardlow, 528 U.S. at 124 ("Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); United States v. Adamson, 441 F.3d 513, 520 (7th Cir. 2006) (noting that nervous behavior contributes to reasonable suspicion); United States v. Withers, 972 F.2d 837, 843 (7th Cir. 1992) (finding reasonable suspicion where the defendant exhibited nervous behaviors such as foot tapping and trembling); the odor of marijuana on defendant's person, see, e.g., Brown, 188 F.3d at 865 (finding that the strong marijuana smoke odor in the defendant's vehicle and his nervous demeanor contributed to reasonable suspicion that he was armed and dangerous); and the previous reports of drug activity in the bar, see Brown, 188 F.3d at 865 (noting that the court may consider the nature of the area in which the encounter occurred); $32,400.00 in United States Currency, 82 F.3d at 140 (finding reasonable suspicion based in part on the defendant's frequenting of tavern known for drug trafficking).

This evidence was sufficient to justify stopping defendant. Further, once defendant defied McCarthy's command that he submit to a pat-down and fled, McCarthy acquired the justification to physically subdue and then search defendant.[9] See Seymour, 2007 U.S. App. LEXIS 313, at *7. Indeed, it could be argued that the circumstances prior to defendant's flight were such that McCarthy could lawfully pat defendant down. See Brown, 188 F.3d at 865 (finding pat-down justified where officer smelled marijuana, the defendant was unusually

---

[9]Stops and searches should be analyzed separately. See United States v. Ruffin, 448 F. Supp. 2d 1015, 1018 (E.D. Wis. 2006).

10

nervous, and the stop occurred in high crime area, and noting that drug dealing is a crime infused with violence); see also United States v. Mitchell, 256 F.3d 734, 737-39 (7th Cir. 2001) (denying motion to suppress where officers responded to anonymous tip of shots fired in high crime area, recognized the defendant from previous encounters, and the defendant appeared nervous, refused to be patted down and instead took off running).

Defendant contends that the officers' testimony as to the odor of marijuana was not credible. He first notes that McCarthy testified to an odor of fresh marijuana, while Kuszynski said he smelled burnt marijuana. He further contends that because the marijuana was contained in a plastic bag inside his pocket, it was not possible for McCarthy to detect it. However, there is no evidence in this record that the odor of fresh marijuana differs substantially from the odor of burnt marijuana or that fresh marijuana cannot be detected from within a sandwich bag.[10] In any event, both officers testified that they detected the odor of marijuana coming from defendant, and under all of the circumstances I cannot conclude that any slight discrepancy in their testimony changes the result.[11] See United States v. Foster, 376 F.3d 577, 583-84 (6th Cir. 2004) (finding that discrepancy in officers' testimony as to whether odor was burnt or fresh-smelling marijuana made no difference to the fact that marijuana was detected in the defendant's vehicle, thereby providing probable cause to search).[12]

Defendant further contends that, despite the information McCarthy received from others

---

[10] As the government notes, McCarthy may have been mistaken in noting the odor to be fresh rather than burnt marijuana.

[11] The officers fully corroborated one another on all other material points.

[12] In any event, even if I were to discount the officers' testimony as to the odor of marijuana, for the reasons set forth above, defendant's flight, coupled with the other, undisputed factors, provided a basis for the seizure and search.

11

about drug use in the tavern, he was aware of only one arrest, which did not involve illegal drugs. However, under Terry, police officers are entitled to rely on information they receive from other officers. See United States v. Hensley, 469 U.S. 221, 233 (1985); United States v. Mora-Higuera, 269 F.3d 905, 910 (8th Cir. 2001).

Noting that the officers did not pat down Orvis, defendant argues that the officers could not have legitimately had a greater fear that he was armed. However, the officers testified that, unlike Orvis, defendant smelled of marijuana, appeared nervous and his leg was shaking. Further, McCarthy stated that he recognized Orvis, which may have reasonably given him a greater degree of comfort with Orvis.[13]

Defendant next argues that the officers could not rely on the fact that he declined McCarthy's invitation to be searched. It is true that when a person at liberty refuses to cooperate, the police cannot use that refusal as a basis for reasonable suspicion. See United States v. Sterling, 909 F.2d 1078, 1082 (7th Cir. 1990). However, as discussed above, the officers had much more to go on in the present case, and fleeing from an officer is not the same as declining to cooperate and walking away. See Tom, 963 F.2d at 958.

Finally, in his objections, defendant contends that the magistrate judge overplayed the significance of the officers' training and experience, and downplayed his initial cooperation with

---

[13] In his objections, defendant argues that the magistrate judge failed to appreciate the racial dynamics of the situation: the white officers questioned and patted down the black man (defendant) but not the white man (Orvis). However, as noted in the text, there were legitimate reasons for distinguishing between the two men. Defendant notes that his nervousness may have arisen from the fact that he was a black man confronted by white officers in a predominantly white city. That may be one explanation; the fact that defendant was allegedly carrying substantial quantities of narcotics is another. In any event, the court need not in considering the legality of a Terry stop discount behavior capable of innocent explanation. Lawshea, 461 F.3d at 859.

12

McCarthy. While it is true that neither officer had specific prior experience in making drug-related arrests at Fatty Arbuckles, as noted above, it was permissible for them to consider the reports they had received from other officers, and courts have repeatedly acknowledged that, as McCarthy testified, drugs and guns often go together. See, e.g., United States v. Price, 184 F.3d 637, 642 (7th Cir. 1999). Defendant states that prior to the attempted pat-down, he was neither evasive nor obstinate, and gave no indication that he was armed and dangerous. I disagree. Defendant behaved in an evasive manner when he backpedaled down the hall as McCarthy tried to open the back door; he was nervous and his leg shook during the encounter with McCarthy; and he continued to move towards the stairs as he spoke with McCarthy.

Therefore, even if McCarthy seized defendant prior to defendant's flight, I would agree with the magistrate judge that McCarthy had reasonable suspicion to do so, and that he obtained grounds to search defendant following the struggle and arrest. Accordingly, for these reasons as well the motion must be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is **ADOPTED**, as stated herein, and defendant's motion to suppress (R. 9) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

13