# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                                   **Case No. 06-CR-117**

**BILL MOORE**
        **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Bill Moore with possession with intent to deliver five grams or more of crack cocaine, 21 U.S.C. § 841(a)(1) & (b)(1)(B), and possessing a firearm as a felon, 18 U.S.C. § 922(g). Defendant pleaded guilty to the offenses, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 29 (base level 30, U.S.S.G. § 2D1.1(c)(5), plus 2 based on firearm possession, § 2D1.1(b)(1), and minus 3 for acceptance of responsibility, § 3E1.1)[1] and his criminal history category at V, producing an imprisonment range of 140-175 months under the advisory sentencing guidelines. Neither side objected to the PSR's guideline calculations. Upon consideration of the factors set forth in 18 U.S.C. § 3553(a), I decided to impose a non-guideline sentence of 78 months.

## I. SENTENCING STANDARDS

In United States v. Booker, 543 U.S. 220, 226-27 (2005), the Supreme Court declared the mandatory federal sentencing guidelines unconstitutional. As a remedy, the Court excised

---

[1]The PSR set an offense level of 14 on the felon in possession charge under U.S.S.G. § 2K2.1(a)(6), then grouped that count with the drug charge under U.S.S.G. § 3D1.2(c).

18 U.S.C. § 3553(b), the provision which made the guidelines mandatory, rendering the guidelines effectively advisory. Id. at 245. Accordingly, the Court directed district judges to impose sentence upon consideration of all of the factors set forth in § 3553(a), including the guidelines. Id. at 259-60.

Section 3553(a) requires the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

While the Seventh Circuit has held that a sentence within the guidelines is, on appeal, presumptively reasonable, see, e.g., United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir.

2005), the district judge may not apply a similar presumption in imposing sentence.

> The judge is not required – or indeed permitted, United States v. Brown, 450 F.3d 76, 81-82 (1st Cir. 2006) – to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). See, e.g., United States v. Miller, 450 F.3d 270, 275 (7th Cir. 2006). His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. United States v. Walker, 447 F.3d 999, 1008 (7th Cir. 2006); United States v. Baker, 445 F.3d 987, 991 (7th Cir. 2006); United States v. Morales, 445 F.3d 1081, 1086 (8th Cir. 2006). The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006).

## II. DISCUSSION

### A. Nature of Offense

On March 22, 2006, officers responded to a report of individuals smoking marijuana in the lower level of a bar and encountered defendant. They tried to pat him down, but he fled, then struggled with the officers when they tried to stop him, slightly injuring one of the officers.[2] After he was brought under control, officers searched defendant and found $741 cash, 45 grams of crack, 82 grams of powder cocaine, and 5 grams of marijuana.[3] Officers also searched defendant's vehicle, in which they found two handguns and ammunition. Although admitting constructive possession of the firearms, defendant claimed that the guns belonged to an associate. The evidence tended to support his claim, as the DNA of another person was

---

[2]The State of Wisconsin charged defendant with battery to a police officer based on the altercation, and a state court sentenced him to six months in jail.

[3]The State also charged defendant with marijuana possession, and he received a sentence of 30 days in jail, concurrent, for that offense.

3

found on one of the guns. The government also seemed to believe defendant's assertion, and his lack of any history with firearms lent further support to the claim.

**B.    Character of Defendant**

Defendant was thirty-three years old and had a fairly substantial record, with convictions for misdemeanor battery, marijuana possession and drunk driving. However, I noted that prior to this incident his only felonies were simple possession cases made felonies because they were second or subsequent offenses. He had no "stand-alone" felony convictions. Thus, while his prior record was fairly extensive, none of the priors were themselves all that serious.

Defendant's childhood was unstable. His step-father used drugs, and he was sent to live with a grandmother to escape the turbulence in his household. The family later moved from rural Arkansas to the City of Milwaukee, and that apparently was somewhat of a shock for him, as he encountered problems with local gangs. Defendant dropped out of high school and developed a problem with marijuana and alcohol, leading to two drunk driving convictions and several simple possession convictions. However, defendant seemed to make an effort to turn things around in 2005. He earned his HSED while in jail for marijuana possession and got a job as a press operator through a temporary service. He established a home with his fiancé, whom he planned to marry in July 2006, and their two children, ages three and two. However, despite training others for permanent jobs, defendant was passed over for a full-time job by his employer. In a misguided effort to help support his family, he turned to drug dealing, leading to his arrest. Nevertheless, defendant's fiancé made positive statements about him to the PSR writer, indicating that he was a good father and that she planned to stick with him.

To his credit, defendant agreed to debrief with law enforcement after his arrest in this matter, and the government found him to be truthful and candid, although his cooperation had

4

not reached the level justifying a substantial assistance motion. Although attempts at cooperation often represent little more than self-interest, in this case I considered defendant's efforts a sign of further positive character development and insight into his poor choices.

Defendant clearly had a significant problem with marijuana, based both on his record and his own statements, for which he had not previously received any significant treatment. To his credit, he took AODA classes while detained on this matter.

**C.      Guidelines and Purposes of Sentencing**

The guidelines called for a term of 140-175 months, but under all of the circumstances, I found this range greater than necessary. First, as indicated above, defendant's criminal history was, prior to this incident, comprised of offenses that were, but for recidivist enhancements, misdemeanors. Nevertheless, under the guidelines he fell in criminal history category V. Generally, those in criminal history category V have serious, prior felony convictions. Further, most of defendant's priors were the result of substance abuse, for which he had not received treatment. Courts have regularly held that criminal history categories comprised of such offenses may over-state the seriousness of the defendant's record.[4] See, e.g., United States v. Dickmann, No. 06-CR-82, 2007 U.S. Dist. LEXIS 8624, at *4-5 (E.D. Wis. Feb. 6, 2007) (imposing non-guideline sentence under 18 U.S.C. § 3553(a)(5) & U.S.S.G. § 4A1.3(b) where the defendant's priors were "were all non-violent, possession and petty theft

---

[4]See U.S.S.G. § 4A1.3(b) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."). While the Seventh Circuit considers traditional guideline departures obsolete in the post-Booker era, see, e.g., United States v. Spano, 476 F.3d 476, 480 (7th Cir. 2007), the sentencing court may continue under § 3553(a)(5) to consider the Commission's policy statements on departures in determining whether the guidelines produce a good fit in the instant case.

5

cases typical of an addict's attempt to get money to buy drugs"); United States v. Henderson, No. 06-CR-70, 2006 U.S. Dist. LEXIS 85660, at *7-9 (E.D. Wis. Nov. 22, 2006) (imposing below guideline sentence under § 3553(a)(5) & § 4A1.3(b) where "all of the offenses involved either possession or associated petty criminality [and the defendant] had no serious felonies, no distribution cases, and no violent crimes on her record"); United States v. Chamulak, No. 06-CR-24, 2006 U.S. Dist. LEXIS 80252, at *8-9 (E.D. Wis. Nov. 1, 2006) (departing where the defendant's category was inflated by drunk driving offenses, and collecting cases granting similar departures); see also United States v. Eisinger, 321 F. Supp. 2d 997, 1007 (E.D. Wis. 2004) (citing United States v. Wilkerson, 183 F. Supp. 2d 373, 381 (D. Mass. 2002) (departing where the defendant had no convictions for crimes of violence but mostly drug and motor vehicle offenses); United States v. Wilkes, 130 F. Supp. 2d 222, 239-40 (D. Mass. 2001) (departing where the defendant had only minor drug convictions); United States v. Lacy, 99 F. Supp. 2d 108, 119 (D. Mass. 2000), aff'd, 16 Fed. Appx. 10 (1st Cir. 2001) (departing where the defendant's record was "largely non-violent, and relatively minor, the kind that characterizes an out-of-control addict"); United States v. Hammond, 37 F. Supp. 2d 204, 205 (E.D.N.Y. 1999) (departing from category VI to III where the defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics"); United States v. Leviner, 31 F. Supp. 2d 23, 32-34 (D. Mass 1998) (departing where the defendant's priors were minor, mostly motor vehicle and possession charges, and non-violent). Thus, in consideration of the Commission's policy statement § 4A1.3(b), I found criminal history category V to substantially overstate the seriousness of defendant's record. See 18 U.S.C. § 3553(a)(5) (directing the court to consider the

6

Commission's policy statements). I required that he receive treatment as part of this sentence, which would reduce the likelihood of his re-offending in similar fashion. See 18 U.S.C. § 3553(a)(2)(C).

Second, I found it appropriate to recognize some of the positives in defendant's background, including his relationship with his fiancé and children. Although he went astray in his attempt to provide for his family, his legitimate concern for them – and the fact that he engaged in this criminal conduct in an effort to support them – provided some mitigation of the seriousness of the offense. See 18 U.S.C. § 3553(a)(2)(A). There was no evidence that defendant was an entrenched dealer or that he profited significantly from his conduct. Further, his strong family support would assist in his re-integration into the community upon his release from prison, reducing the likelihood of his re-offending. See 18 U.S.C. § 3553(a)(2)(C).

Third, I found it likely that the guns found in defendant's van belonged to his associates, not him. He had no other history of gun violence. Thus, I concluded that a sentence treating defendant as if he had engaged in this harmful conduct would be greater than necessary to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Fourth, defendant had never before been to prison; all of his prior sentences were fines or county jail terms. As the government noted, any sentence I could impose within the statutory range of 5-40 years would be dramatically longer than any prior term and thus sufficient to deter defendant from re-offending. See 18 U.S.C. § 3553(a)(2)(B). Generally, a court should impose graduated punishments to achieve deterrence, see, e.g., United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005), and in this case I found that defendant could be deterred with a sentence below the guideline range.

Fifth, I considered the fact that defendant's guideline range was dramatically increased

7

by the fact that he possessed crack cocaine.[5] "As is now notorious, the guidelines create a 100 to 1 ratio between crack and powder cocaine." United States v. Smith, 359 F. Supp. 2d 771, 777 (E.D. Wis. 2005). In other words, they regard possession of 1 gram of crack as serious as possession of 100 grams of powder cocaine, despite the fact that crack cocaine is produced from powder and the two substances are pharmacologically indistinguishable. Id. at 778-80. The Sentencing Commission has produced detailed reports explaining how this ratio undermines the purposes of sentencing in § 3553(a). See United States Sentencing Commission, Cocaine and Federal Sentencing Policy (May 2007); see also United States v. Pickett, 475 F.3d 1347, 1353-54 (D.C. Cir. 2007) (discussing previous Commission reports); United States v. Leroy, 373 F. Supp. 2d 887, 891-92 (E.D. Wis. 2005) (discussing the flaws in the 100:1 ratio). In the present case, defendant possessed 45 grams of crack and 82 grams of powder cocaine. Had he possessed all powder cocaine, his base offense level would have been 18 rather than 30, and his imprisonment range 46-57 months rather than 140-175 months, even with the firearm enhancement.

The Seventh Circuit has held that a "district court simply cannot substitute its own ratio for the 100:1 ratio." United States v. Jointer, 457 F.3d 682, 687 (7th Cir. 2006). However,

> once a correct guideline sentence has been calculated, the district court must fashion an individual sentence for the defendant before it by evaluating all the facts and circumstances of the case in light of the criteria set forth by Congress in 18 U.S.C. § 3553(a). At this later stage of the sentencing proceedings, the Sentencing Commission's detailed reports on crack and cocaine sentencing may have practical utility to a district court's evaluation of the facts and circumstances of the individual case in light of the § 3553(a) factors. However, . . . the analysis and data contained in the reports cannot alone justify a below-guidelines sentence; they can be considered only insofar as they are refracted through an

---

[5]As indicated above, the felon in possession guideline was subsumed within the crack guideline under U.S.S.G. § 3D1.2(c).

8

individual defendant's case. This is not to say, of course, that a district court must consult the Sentencing Commission reports in any given sentencing. Nor will reliance on the Sentencing Commission reports shield a district court from a reasonableness review on appeal because, at the core, the district court must still tie the § 3553(a) factors to the individual characteristics of the defendant and the offense committed.

Id. at 687-88 (internal footnote, citations and quote marks omitted); see also Pickett, 475 F.3d at 1355-56 (discussing district courts' authority to vary from the crack guideline in an individual case); United States v. Gunter, 462 F.3d 237, 248-49 (3d Cir. 2006) (same). I have attempted to apply this method of analysis in post-Jointer cases. Compare United States v. Willis, 479 F. Supp. 2d 927, 936-37 (E.D. Wis. 2007) (imposing below-guideline sentence based in part on problems with 100:1 ratio under specific facts of the case), with United States v. Reid, No. 06-CR-221, 2007 U.S. Dist. LEXIS 20666, at *7 (E.D. Wis. Mar. 22, 2007) ("In the present case, while defendant noted some of the general problems with the ratio, he did not convincingly relate them to his case.").[6]

---

[6]The Sentencing Commission recently proposed an amendment to the guidelines, which would have the effect of reducing crack sentences by 2 levels. See United States Sentencing Commission, Amendments to the Sentencing Guidelines 66-67 (May 11, 2007). Defendant asked me to follow the Sentencing Commission's proposal in his case. However, as defendant acknowledged, that amendment will not go into effect until November 1, 2007, and then only if Congress does not disapprove it. The court should generally apply the guidelines in effect at the time of sentencing, and reliance on proposed amendments can be dicey. See United States v. Kosmel, 272 F.3d 501 (7th Cir. 2001). Further, this proposal did not qualify as a policy statement under § 3553(a)(5), as defendant suggested. Thus, I did not modify the guideline range based on the new proposal, but rather considered the flaws in the current guideline structure under § 3553(a) and Jointer, as refracted through defendant's individual case. Earlier this week, the Supreme Court agreed to consider whether a sentence is unreasonable because it was below the guideline range and based on the disparity between sentencing for crack and powder cocaine. Kimbrough v. United States, 174 Fed. Appx. 798 (4th Cir. 2006), cert. granted, No. 06-6330, 2007 U.S. LEXIS 7524 (U.S. June 11, 2007). Hopefully, the Court will provide guidance on the extent of district courts' discretion to impose sentences in crack cases which acknowledge the flaws in the current structure of the guidelines.

9

In this particular case, the crack guideline produced an offense level greater than necessary to satisfy the purposes of sentencing. First, defendant was a low level street dealer, who apparently received little profit from his activities. As indicated above, defendant possessed both powder and crack cocaine, and there was no evidence that he made a conscious decision to deal in the latter rather than the former. Had he possessed only powder, his range would have been considerably lower. Second, despite the fact that the crack guidelines treat all such offenders as if they had engaged in the harmful conduct thought to be associated with crack dealing, there was no evidence of that in the present case. Although officers found guns in defendant's van, the weapons did not belong to defendant. Nor did he have a history of gun violence. Nor was there any evidence of specific harmful effects on the community from defendant's conduct or of any specific victims of his dealing.[7]

For all of these reasons, the guideline range was greater than necessary to satisfy the purposes of sentencing. Defendant also asked me to take into account his state prosecution for battery to a police officer and marijuana possession arising out of the March 22, 2006 arrest. As noted above, a state court sentenced defendant to six months in jail for the battery and thirty days in jail, concurrent, for marijuana possession. I recognized that these prosecutions occurred but failed to see how they impacted the appropriate sentence in this case under § 3553(a). None of the conduct at issue in the state sentences was taken into account in his guidelines in the instant case; the PSR excluded the marijuana from the drug weight calculation, and he received no enhancement for battering the officer under U.S.S.G.

---

[7] It is true that one of the arresting officers was injured in the scuffle with defendant, but defendant was separately punished for that offense in state court. Further, this is not the type of violence that motivated the Commission to provide disparate penalties for crack as opposed to powder cocaine.

§ 3A1.2. Defendant noted that he had to proceed in two separate courts and could not achieve a global disposition, but this would be unfair only if the federal and state courts imposed sentence based on the same or related conduct. Cf. U.S.S.G. § 5G1.3(b) & cmt. n.2. Here, as indicated, the battery and marijuana aspects did not affect the guidelines and did not affect the sentence under § 3553(a). I did not think it appropriate, then, to in effect award credit for the time spent in state custody, which was based on different facts and was credited towards a different sentence.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 78 months sufficient but not greater than necessary. This sentence accounted for the overstatement in defendant's criminal history, the positives in his character and background, the mitigation regarding the guns, and the effect of the crack/powder ratio, while still providing for just punishment and deterrence. Because the sentence was supported by the Commission's policy statement § 4A1.3 and its reports concerning the crack/powder disparity, and was based on the particular facts of the case, it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 78 months on both counts to run concurrently, with a recommendation that he participate in any substance abuse programs available. Upon release, I ordered defendant to serve a four year supervision term, including, inter alia, a drug aftercare condition. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2007.
/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

11